# Exhibit 1

 **CT Corporation**

| | |
|---|---|
| **TO:** | Norma Teran<br>Jacobs Engineering Group, Inc.<br>600 Wilshire Blvd, Suite 1000<br>Los Angeles, CA 90017 |
| **RE:** | **Process Served in Tennessee** |
| **FOR:** | Jacobs Engineering Group Inc.  (Domestic State: DE) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | VERNON D. ALLEN, ET AL., PLTFS. vs. JACOBS ENGINEERING GROUP, INC., ET AL., DFTS.<br>*Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Complaint |
| **COURT/AGENCY:** | Roane County Circuit Court, TN<br>Case # 73CC12018CV30 |
| **NATURE OF ACTION:** | Medical Injury - Improper Care and Treatment - Wrongful death |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Knoxville, TN |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/20/2018 at 09:00 |
| **JURISDICTION SERVED :** | Tennessee |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days from the date this summons is served upon you (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | John Dupree<br>Market Street Law, PLLC<br>625Market Street, 14th floor<br>Knoxville, TN 37902<br>865-245-4438 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780134634148<br><br>Image SOP<br><br>Email Notification,  Norma Teran  norma.teran@jacobs.com<br><br>Email Notification,  Cynthia Stevens  cynthia.stevens@jacobs.com |
| **SIGNED:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>300 Montvue RD<br>Knoxville, TN 37919-5546<br>312-345-4336 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Case 3:18-cv-00153-TAV-HBG   Document 1-2   Filed 04/17/18   Page 2 of 31   PageID #: 29

| Roane County Circuit Court<br>200 E Race Street, Suite 11<br>Kingston, TN 37763<br>(865)376-2390 | STATE OF TENNESSEE<br>CIVIL SUMMONS<br>page 1 of 1 | Case Number<br>73CC1-2018-CV-30 |
|---|---|---|

### Vernon D Allen (et. al) vs Jacobs Engineering Group, Inc. (et. al)

Served On:

| Jacobs Engineering<br>Group, Inc. | C/O Registered Agent, CT Corp. System<br>800 S. Gay Street, Ste. 2021<br>Knoxville, TN 37929 |
|---|---|

You are hereby summoned to defend a civil action filed against you in Roane County Circuit Court, Roane County, Tennessee. Your defense must be made within thirty (30) days from the date this summons is served upon you. You are directed to file your defense with the clerk of the court and send a copy to the plaintiff's attorney at the address listed below. If you fail to defend this action by the required date, judgment by default may be rendered against you for the relief sought in the complaint.

Issued: 3/9/2018 _____

_Amy Brown_
Clerk / Deputy Clerk, Roane County Circuit Court

Attorney for Plaintiff:  James K Scott
625 Market Street, 14th Floor, Knoxville, TN 37902

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S): Tennessee law provides a ten thousand dollar ($10,000) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of the homestead exemption depends upon your age and the other factors which are listed in TCA §26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for your self and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to execute it, you may wish to seek the counsel of a lawyer. Please state file number on list.

Mail list to   Ann Goldston, Roane County Circuit Court Clerk, Roane County
200 E Race Street, Suite 11
Kingston, TN 37763

### CERTIFICATION (IF APPLICABLE)

I, Ann Goldston, Roane County Circuit Court Clerk of Roane County do certify this to be a true and correct copy of the original summons issued in this case.

Date: _____

_____
Clerk / Deputy Clerk – Roane County Circuit Court

OFFICER'S RETURN: Please execute this summons and make your return within ninety (90) days of issuance as provided by law. SAMANTHA SUTTON

I certify that I have served this summons together with the complaint as follows: Jacobs Engineering N. Baird 2525

Date: MAR 2 0 2018          By: _____

RETURN ON SERVICE OF SUMMONS BY MAIL: I hereby certify and return that on _____, I sent postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in the above styled case, to the defendant _____. On _____ I received the return receipt, which had been signed by _____ on _____. The return receipt is attached to this original summons to be filed by the Court Clerk.

Date: _____

_____
Notary Public / Deputy Clerk (Comm. Expires _____)

_____
Signature of Plaintiff

_____
Plaintiff's Attorney (or Person Authorized to Serve Process)
**(Attach return receipt on back)**

_ADA: If you need assistance or accommodations because of a disability, please call Lucy Guy, ADA Coordinator, at (865)376-2390_

Rev. 8/05/10

Filed
3-9 2018
ANN GOLDSTON Time 4pm
By Amy Brown D.C.

## IN THE CIRCUIT COURT FOR ROANE COUNTY, TENNESSEE

VERNON D. ALLEN and SANDRA ALLEN;     )    2018-CV-30
CINDY BAKER; GEORGE BALDWIN;    )
GARRY BEASON and KAREN BEASON;    )
PAUL BENNETT, JR.;    )
DOUGLAS BLEDSOE and JOHNNIE BLEDSOE;    )
KATIE BOTTS;    )
SHERRI BOTTS;    )
MICHAEL BOWLIN;    )
TERRANCE BRASHEARS;    )
BRADLEY BROWN and JENNIFER BROWN;    )
COREY BUCHANNON;    )
JACKIE BUNCH;    )
STEVEN BUNKLEY and KATHLEEN BUNKLEY;    )
CHRISTOPHER BURBAGE and LAURA BURBAGE;    )
BRIAN BURCHFIELD and AMY BURCHFIELD;    )
MICHAEL BURUM;    )
BRIAN CARROLL;    )
VINCENT CHESSER and JAMIE CHESSER;    )
GARY COLE and JUANOTA COLE;    )
MICHAEL COLYER;    )
LENA and DAVID COPELAND    )
    for the EST. OF LEONARD    )
    COPELAND, deceased, and    )
THE ESTATE OF JUDY COPELAND, deceased;    )
LARRY CORDELL and JACKIE CORDELL;    )
JERRY COXEY and CINDY COXEY;    )
RICHARD CRANE;    )
AMANDA CRUMBY for the    )
    EST. OF PAUL SMITH, deceased    )
HAROLD DAVIS, JR. and VICKIE DAVIS;    )
WILBERT DAVIS;    )
KIMBERLEIGH DISHMAN and JOHN DISHMAN;    )
DONALD DIXSON and TONI LYNNETTE DIXON;    )
DAVID DUGGER and VALERIE DUGGER;    )
KEVIN DUNCAN and TAMRA DUNCAN;    )
STORMY DUNN;    )
DARYL FINK, SR. and KAREN FINK;    )
DANIEL FORRESTER and JAWANNA FORRESTER    )
CLAYTON FOUST and PAM FOUST;    )
JACK FOZZARD;    )

1

JAMES FREELS and ASHLEY FREELS; )
BOBBY GANN and ANGELA GANN; )
SARA GARDNER and RICKY GARDNER; )
JAMES GILLIAM and KAREN GILLIAM; )
DANNY GOUGE; )
BRADFORD GREEN and GINGER GREEN; )
ROGER GRIFFITH and JULICE GRIFFITH; )
JOHNNY HALL and BILLIE JO HALL; )
BOBBY HAIRE and CELENA HAIRE; )
GLEN HANEY, JR., and DIANA HANEY; )
MARK HENDERSON and BRANDY HENDERSON; )
CHARLES HUCKABY, JR. and BRENDA HUCKABY; )
JOHN JENNINGS; )
MARK JOHNSON and TAMMY JOHNSON; )
TOMMY JOHNSON and BETTY JOHNSON; )
AMY JONES; )
MICHAEL JUSTICE; )
CHARLES KEEL, JR. and KIMBERLY KEEL; )
MELVIN KIDD and REGINA KIDD; )
STEVIE KILBY and MELISSA KILBY; )
KEVIN KILE and JULIA KILE; )
WESLEY ROMAN LAWSON; )
MICHAEL LAYMANCE and DENISE LAYMANCE; )
RUSTY LAYMANCE; )
FRANK LEE and PAULA LEE; )
WILLIAM LEE and DIANE LEE; )
ELMER LOWE; )
SEAN MAY and SYLVIA MAY; )
CONLEY MARK MACK; )
GEORGE McALLISTER and SUZIE McALLISTER; )
S.T. McCOLLUM and KATHY McCOLLUM; )
DALE McGILL and DONNA McGILL; )
DAVID MILLSAPS and LORETTA MILLSAPS; )
JAMES MONROE and SARAH MONROE; )
ROGER MOORE and LINDA MOORE; )
RYAN MULLOY; )
STEVE PETTYJOHN and PAMELA PETTYJOHN; )
DANIEL PRESSLEY; )
JAMES PRICE and RUBY PRICE; )
TIMOTHY RICKER; )
JONES RISNER; )
DAVID RAY; )
MICHAEL ROBINETTE; )

2

JAMES ROGERS and CAROL ROGERS;&#9;)
VINCENT ROMASCO and DONNA ROMASCO;&#9;)
ERNESTINE SARGENT;&#9;)
GREG SCHWARTZ and TRIEU SCHWARTZ;&#9;)
JOHN SEXTON and DORETTA SEXTON&#9;)
KEVIN SEEBER and KRISTY SEEBER;&#9;)
ROBERT SHUBERT, III.;&#9;)
DENNIS SMITH;&#9;)
MARY STEFANIE SMITH;&#9;)
ANTHONY SPRADLIN and LISA SPRADLIN;&#9;)
HORACE B. STAIR;&#9;)
RUSSELL STANSBERRY;&#9;)
TIMOTHY STEELE and SHANNON STEELE;&#9;)
WILLIAM STEPHENS and LINDA STEPHENS;&#9;)
JAMES STYLES, JR. and CRYSTAL STYLES;&#9;)
JOHN SUTER and ABBY SUTER;&#9;)
TOMMY SWICEGOOD and JANNIE SWICEGOOD;&#9;)
DAVID THOMPSON and LINDA THOMPSON;&#9;)
LEWIS THOMPSON and CLATA THOMPSON;&#9;)
RANDALL TILLEY and STEFANIE TILLEY&#9;)
BRYAN TODD for the EST. OF HOBERT TODD, deceased;&#9;)
BRANDON TURPIN;&#9;)
ERNIE TURPIN;&#9;)
BENJAMIN WEST and BRITTANIE WEST;&#9;)
DAVID WEST and SHARRON WEST;&#9;)
BRIAN WEIFORD;&#9;)
ROBBIE WEIFORD;&#9;)
EDWINNA WHITSEL and DAVID WHITSEL;&#9;)
PATRICK WOOD for the EST. OF POLLY S. WOODS;&#9;)
ALEX WRIGHT;&#9;)
KENNETH WRIGHT and MARTHA WRIGHT;&#9;)
WILLIAM YATES and JACKY YATES,&#9;)
&#9;)
&#9;&#9;Plaintiffs,&#9;)
&#9;)
&#9;)
v.&#9;)&#9;No. 2018-CV-30
&#9;)
&#9;)
JACOBS ENGINEERING GROUP, INC.&#9;)
&#9;&#9;Rogers Group Investments, Inc.,&#9;)
EnSafe Engineering Services, And&#9;)
&#9;&#9;EnSafe Inc.&#9;)
&#9;)
&#9;&#9;Defendants.&#9;)

3

# COMPLAINT

Come now Plaintiffs, by and through counsel, to hereby bring their action for personal injuries from toxic fly ash exposure. Plaintiffs allege upon personal knowledge, information and belief as to the acts as follows:

## STATEMENT OF CASE

1.    This is a civil action for personal injury involving the contraction of illnesses resulting from continuous unlawful exposure to arsenic, the neurotoxin mercury, barium, strontium, thallium, lead, silica-quartz, asbestos, radioactive material, selenium, aluminum oxide, iron oxide, calcium oxide, boron, and other hazardous substances associated with toxic fly ash located at the TVA Superfund cleanup site (hereinafter "the Site") at Kingston, Tennessee, in which Jacobs Engineering Group, Inc. (hereinafter sometimes referred to as "Jacobs") did not carry out validly conferred authority, but acted contrary to and outside its scope of contractual authority and directives in fact and law granted from TVA as an "independent contractor". Further, Jacobs did not execute the will of any governmental function. The Rogers Group Investments, Inc. (Hereineafter "Rogers Group"), was in custody and control of a quarry used for disposal of fly ash and was negligent in its dust control measures.

## JURISDICTION AND VENUE

2.    All actions complained of herein arose in Roane County, Tennessee where the toxic cleanup and Plaintiffs' exposure occurred. Jacobs is a foreign corporation. Rogers

4

Group is a domestic corporation. Therefore, this Court has venue and jurisdiction over the claims.

## THE PARTIES

3.     Plaintiffs, as listed above, all reside in Tennessee.

4.     Defendant Jacobs Engineering Group, Inc. (hereinafter "Jacobs") is a foreign corporation with its principal place of business in Pasadena, California. Jacobs Engineering Group, Inc. was licensed to do business, and was and is doing business, in the State of Tennessee, Roane County, and elsewhere and is directly liable for all actions contained herein. Jacobs may be served through its Registered Agent for Process, CT Corporation System, 800 South Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710.

5.     Defendant The Rogers Group Investments, Inc., is a domestic corporation with its principal place of business in Nashville, Tennessee. The Rogers Group was licensed to do business, and was and is doing business, in the State of Tennessee, Roane County, and elsewhere and is directly liable for all actions contained herein. The Rogers Group may be served through its Registered Agent for Process, C.T. Corporation Systems, 300 Montvue Road, Knoxville, Tennessee 37919-5546.

6.     Defendant EnSafe, Inc. ("EnSafe") is a Corporation duly formed in the State of Tennessee with its primary place of business located at 5724 Summer Trees Drive, Memphis, Tennessee 38134-7309 and may be served with process through its designated agent for service of process Donald E. Bradford, 5724 Summer Trees Drive, Memphis, Tennessee 38134-7309.

7.     Defendant EnSafe Engineering Services, P.C. ("EnSafe Engineering") is a Professional Corporation duly formed in the State of Tennessee with its primary place of

business located at 5724 Summer Trees Drive, Memphis, Tennessee 38134-7309 and may be

served with process through its designated agent for service of process Michael A. Wood, 5724

Summer Trees Drive, Memphis, Tennessee 38134-7309. **GENERAL ALLEGATIONS**

## The Site

8.     The events described herein took place primarily at the TVA KIF Superfund

cleanup site in Kingston, Roane County, Tennessee. Jacobs was contracted as the "independent

safety contractor" directed by TVA to provide a safe environment for all workers at the KIF toxic

spill remediation site, including other individual independent contractors such as Plaintiffs, who

performed toxic fly and bottom ash remediation at KIF in regards to the ash spill site in

Kingston, Tennessee. At all times material herein, Jacobs acted outside the scope of direction

and authority conferred by TVA and contrary to its adopted Site Wide Safety and Health Plan

(SWSHP) it created as an "independent contractor" to provide complete safety oversight for

TVA. Jacobs was an "independent contractor" for all purposes of its contract with TVA. The

Contract required Jacobs to comply with all laws and regulations and other directives from TVA.

Otherwise, Jacobs was independent. At all times material herein, Jacobs further intentionally or

recklessly deviated from its scope of authority and the purpose for use of its independent

expertise. Further, individuals at the KIF remediation site and adjoining landowners were

dependent upon Jacobs acting in good faith regarding safety, but it did not.

## Events and Facts Surrounding the Continuous Unlawful Exposure Incurred by Plaintiffs

9.     TVA had entered into prime contracts with several companies, including Jacobs,

Ensafe and/or Ensafe Engineering, and Rogers Group (Jacobs oversees site safety at KIF) and,

upon information and belief, the contracts with Jacobs greatly exceeded forty million dollars

6

($40,000,000.00). These defendants and each of them contracted for work with TVA whereby their actions and inactions directly and proximately caused the injuries that give rise to the claims of the Plaintiffs' herein.

10. Jacobs promised and adopted a Site Wide Safety and Health Plan in part to appropriately provide safety equipment, training and education relevant to cleanup of environmental contamination/remediation, properly monitor the air, and other clean up responsibilities for the benefit of TVA. Their job was to protect the taxpaying citizens of Roane County, workers at the Site, and the general area in order to restore portions of property damaged by the Kingston (KIF) ash spill. Further, Jacobs was contracted to provide equipment, training, and education to TVA's subcontractors and all other employees/independent contractors performing remediation work at the Site. The TVA contract with Jacobs was one in which TVA granted and totally relied upon Jacobs' independent decision making for safety as an "independent contractor".

The Contract states:

> Contractor *shall* be an independent Contractor for all purposes of this contract ... .
>
> Contractor **shall comply with Federal, State, and local laws (including regulations)** affecting performance of its obligations under this contract and will indemnify and defend TVA from all liability resulting from its violation of such laws, regardless of whether TVA and Contractor are determined to be joint employers or co-employers. Contractor is responsible for ensuring compliance, including compliance by its subcontractors, with applicable compensation laws, rules, and regulations such as Fair Labor Standards Act. (Ex: A).

AND

7

TVA expects its contractors to protect workers from conditions that are unnecessarily dangerous to human health.

   A.   Purpose: TVA believes that Safety and Health is its most
   important value and all injuries and most illnesses, both on and off
   the job, are preventable. TVA is a zero injury culture company and
   expects its contractors and their sub-contractors to be committed to
   a zero injury work culture environment. In other words,
   occupational accidents or other incidents in which human health or
   safety is jeopardized are never acceptable.

   B.   Standards: Contractor will be proactive in taking necessary
   measures to avoid accidents or incidents which human health or
   safety is jeopardized. Contractor shall not permit any person
   employed by it or any subcontractor in the performance of work
   pursuant to this Contract at a project or worksite owned or
   controlled by TVA to work in surroundings or under working
   conditions which are unnecessarily dangerous to human safety or
   health.

   In the event of conflict between OSHA regulations and the TVA
   requirements, the more stringent, i.e., the more protective of
   occupational health and safety, shall apply.

11.   The Rogers Group was charged with maintaining a quarry in the vicinity of the

site and was directly involved with disposal of fly ash, which created and/or added to the dust

generation and exposure to fly ash by the Plaintiffs herein.

12.   Defendant EnSafe and/or EnSafe Engineering was contracted to conduct

environmental testing and survey the site to determine the contaminant levels at the TVA

KIF cleanup site in Kingston, Roane County, Tennessee where a remediation of TVA's "ash

spill" from underlying commercial power activity occurred and was ongoing in nature.

8

13.     At all times material herein, EnSafe and/or EnSafe Engineering recklessly and/or negligently acted outside the scope of direction and authority conferred by TVA and contrary to mandates under its Site Wide Safety and Health Plan (SWSHP).

The defendants' job was to conduct the contaminant testing and report to TVA, EPA and others in such a manner as to protect the taxpaying citizens of Roane County, workers at the Site and the general area in order to safely remediate the Kingston (KIF) ash spill.

EnSafe and/or EnSafe Engineering negligently failed to detect the true levels of contaminants, failed to warn TVA, Jacobs Engineering, the workers and residents of the dangers posed by the toxic constituents on the site.

14.     As a direct and proximate result of the negligence of EnSafe and/or EnSafe Engineering, the plaintiffs were harmed by the toxic constituents to which they were exposed.

15.     Defendant Rogers Group contracted with TVA to provide gravel and a dump site for recovered ash from the Kingston (KIF) ash spill site.

16.     Defendant Rogers Group was negligent in the operation of the contract with TVA as they failed to institute safety precautions to protect plaintiffs from exposure to the dust created by the transportation of the recovered fly ash to and from the Kingston (KIF) ash spill site.

17.     As a direct and proximate result of the negligence of Rogers Group, the plaintiffs were harmed by the toxic constituents to which they were exposed.

9

18    All actions described herein that were tortuously or intentionally committed by Jacobs upon Plaintiffs were outside the contracted scope and knowledge of TVA and were done independently. Rogers Group was negligent in its duties to the Plaintiffs and the community.

19.    Despite Jacobs' duties under this multi-million dollar agreement with TVA, it acted outside the scope of TVA and exceeded its authority and federal authority by misrepresenting or concealing to independent contractors and others at the Site, TVA, and the Roane County citizens that the Superfund remediation would be conducted in a safe manner. Further, upon information and belief, Jacobs made numerous representations that fly ash was not harmful to human health, which is contrary to the safety plan documentation adopted, created, and possessed by Jacobs. Additionally, Jacobs did not appropriately mention the dangers of fly ash to certain companies, their employees, or independent contractors. Jacobs did not execute the will of TVA as explained further herein.

20.    Jacobs had in its possession manuals for fly ash safety that contained vital information on fly ash toxins that were not properly disseminated to individuals, including Plaintiffs, working at the Site. Jacobs created and adopted, but intentionally did not follow, its own Site Wide Safety and Health Plan it submitted to TVA. Jacobs engaged in dangerous and intentional harmful deviations to their adopted plan, significantly more drastic than was the cause that was the basis for landowner recovery based upon governmental liability in Mays v. TVA, 699 F. Supp. 2d 991 (E.D. Tenn. 2010). Jacobs never informed Plaintiffs of the fly ash dangers, nor adhered to its SWSHP.

21.    In addition, Jacobs knowingly and intentionally lied to the workers such as Plaintiffs about the safety of fly ash constituents. These actions fell outside the scope of the

10

authority conferred by TVA. For example, one worker at the Site stated under oath, along with a companion recording, disparaging Jacobs threatening he would hang himself with his own genitalia if he wore a dust mask on the Site for his protection; something that is as simple and necessary for use when one paints a house. However, this was a toxic Superfund remediation site.

22.     In Jacobs' possession were documents that referenced toxic constituents and target organs. One example of such information was/is entitled "Fly Ash Constituent Information."



TABLE 4-1
FLY ASH CONSTITUENT INFORMATION

| CONSTITUENTS | CAS # | REF. ACTION LEVEL | TWA EXPOSURE LIMIT | ROUTES OF EXPOSURE | SYMPTOMS OF EXPOSURE | TARGET ORGANS | NIOSH METHOD |
|---|---|---|---|---|---|---|---|
| SILICA – QUARTZ RESPIRABLE CRISTOBALITE | 14808-60-7 | | | INHALATION, SKIN AND/OR EYE CONTACT, INGESTION | COUGH, DYSPNEA, WHEEZING, PROGRESSIVE RESPIRATORY SYMPTOMS (SILICOSIS), IRRITATION EYES | EYES, RESPIRATORY SYSTEM | 7500 7601 7602 |
| ALUMINUM OXIDE | 1344-28-1 | | | INHALATION, INGESTION, SKIN AND/OR EYE CONTACT | IRRITATION EYES, SKIN, RESPIRATORY SYSTEM | EYES, SKIN, RESPIRATORY SYSTEM | 0500 0600 |
| BARIUM | 7440-39-3 | | | INHALATION, INGESTION | BARON PNEUMOCONIOSIS | RESPIRATORY SYSTEM | 7020 7301 7303 6102 |
| CALCIUM OXIDE | 1305-78-8 | | | INHALATION, INGESTION, SKIN AND/OR EYE CONTACT | IRRITATION EYES, SKIN, UPPER RESPIRATORY TRACT, NOSE PERFORATION, NASAL SEPTUM | EYES, SKIN, RESPIRATORY SYSTEM | 7020 7303 |
| ARSENIC (INORGANIC) | 7440-38-2 | | | INHALATION, SKIN ABSORPTION, INGESTION | ULCERATION OF NASAL SEPTUM, DERMATITIS, GASTROINTESTINAL DISTURBANCE, PERIPHERAL NEUROPATHY, RESPIRATORY IRRITATION | LIVER, KIDNEYS, SKIN, BLOOD, LYMPHATIC SYSTEM | 7300 7301 7303 7900 8310 |

23.     Upon information and belief, this information was intentionally/recklessly not properly disseminated to certain companies, persons onsite, including Plaintiffs, in accordance with TVA's safety directives and the Emergency Planning and Community Right to Know Act. This intentional and knowing omission was contrary to the safety directives of TVA and

11

contrary to the scope of authority conferred to Jacobs by TVA as the "independent contractor" upon which TVA relied.

Furthermore, upon information and belief, many of the toxins, routes of exposure, and target organs were recklessly omitted from the initial Site Wide Safety Plans that were drafted for the years preceding 2013.

24.    At all times material hereto, Jacobs had full access to specialized information relevant to fly ash toxins and, based upon information and belief, Jacobs knew of the dangers and should have communicated them and protected all workers near the Site and to people living nearby but lied about the dangers of it contrary to the will of any civilized governmental society.

25.    Jacobs deviated from exercising reasonable judgment to protect human health by committing impermissible reckless and/or intentional deviations from its Site Wide Safety and Health Plan promises to TVA, its ratepayers, and the workers it contractually obligated itself to protect. Jacobs acted intentionally and recklessly in bad faith disregarding human health, which was at the very essence and unique nature of its purpose of TVA contracting with them as the complete site wide "independent contractor" for safety. In short, converse to other contractors that normally engage in similar forms of contracting, Jacobs, in the present action, actually conflicted with federal policy and TVA policy to such a criminally gross extent that it required displacement of any available immunity as will be further demonstrated in the forthcoming paragraphs. By engaging in the conduct enumerated further in this Complaint, Jacobs committed the following non-discretionary violations:

a.    42 U.S.C. 7401, *et seq.*

12

b.      Tenn. Code Ann. § 39-13-101;

c.      Tenn. Code Ann. § 39-13-103;

The Tennessee State Air Pollution Control Regulations

d.      Tenn. St. Reg. 1200-3-3;

e.      Tenn. St. Reg. 1200-3-5;

f.      Tenn. St. Reg. 1200-3-8;

g.      Tenn. St. Reg. 1200-3-10;

h.      Tenn. St. Reg. 1200-3-11;

i.      Tenn. St. Reg. 1200-3-12;

j.      Tenn. St. Reg. 1200-3-13;

k.      Tenn. St. Reg. 1200-3-19;

l.      Tenn. St. Reg. 1200-3-22; and

m.      Tenn. St. Reg. 1200-3-37.

26.     Plaintiffs were intentionally denied appropriate and/or timely safety training in regard to the hazards associated with inhaling toxic fly ash, as the impression was given to them that the environment was safe by Defendant. Inadequate safety training was contrary to its own Safety Plan, TVA directives, and the will of any civilized governmental society when considering the hazards and consequences.

27.     Defendant provided inadequate medical monitoring for Plaintiffs' health regarding the hazardous fly ash constituents. This, too, was outside the scope of authority conferred by TVA and their Site Wide Safety and Health Plan. In some instances, Defendant refused prescribed respirators by physicians and even dust masks (that would be as simple as

13

using one to paint one's home) and conspired to remove people from employment that got said prescriptions. One employee stated:

> I worked at the Kingston ash spill site from Feb. 2008 to June 2013.
>
> On or about the month of June 2013, I was prescribed a respirator by my physician due to breathing problems that developed while working there.
>
> Shortly after presenting this prescription to safety personnel, I was informed I could not wear the respirator, despite it being prescribed by my physician. I was prohibited from working and was soon after terminated.

28.     Plaintiffs worked long hours per day in close proximity with toxic fly ash constituents, and took significant amounts home on their clothing after working up to an average of sixteen (16) to seventeen (17) hours per day. However, Jacobs did not provide complete proper safety equipment to Plaintiffs and others, and, in fact, discouraged use of safety equipment by threats to almost all workers at the Site. Even bringing your own dust mask to wear was prohibited and individuals would be threatened with job status if worn. There was also dust masks onsite designed for use but were prohibited for use to protect human health and even taken away from availability after purchase with ratepayer dollars.

29.     The improper handling of the fly ash, caused by Jacobs, resulted in the ash becoming airborne and allowed for windward erosion throughout the Site and adjoining properties allowing unsafe contact, inhaling, and ingestion. In fact, Jacobs would require its subcontractors to wet and suppress fly ash around stationary air monitors and wash them to

14

lower readings so that the public, including Plaintiffs, would be misled. Jacobs would not engage in as much water suppression in areas of the Site that were not being monitored intentionally creating unsafe conditions for human health contrary to its obligations and scope of authority.

30.     Further, Jacobs primarily allowed mobile air monitoring units to be worn only on days of rain when the fly ash would not be airborne – thus lowering the readings and providing misleading results. Additionally, Jacobs would engage in a practice of misrepresenting results of the records where high readings should or would have occurred that were beyond permissible exposure limits (PELs).

31.     Due to these actions, and the failure of Defendant to provide proper safety equipment, Plaintiffs inhaled the fly ash dust and debris material and, on occasion, the fly ash would become imbedded in Plaintiffs' skin. Consequently, Plaintiffs were improperly exposed to high concentrations of fly ash toxic constituents while working on the Site for a prolonged duration of time.

32.     It is imperative to repeat, when high readings would occur beyond permissible toxic exposure limits, upon information and belief, sometimes air monitoring records would be destroyed outside the scope of all laws referenced, the purpose of Jacobs' presence at KIF, and any authority conferred by TVA.

33.     Failure to provide hazardous materials workers with personal protective equipment is a violation of federal and state worker protection law.

34.     Jacobs fraudulently concealed the fact Plaintiffs had been exposed to hazardous substances.

15

35. Further, upon information and belief, these fly ash constituents and other hazardous substances have remained present in the air, soil, and water at the Site until the present time.

36. The effects of continued exposure to such hazardous substances proximately caused Plaintiffs to contract illnesses, from which they will never recover. The healthcare costs incurred by these plaintiffs are millions of dollars.

## FIRST CLAIM FOR RELIEF

### Negligence

37. In accordance with the principle in Mays v. TVA, 699 F. Supp.2d. 991 (E.D. Tenn. 2010), Defendant did not follow their own adopted Site Wide Safety and Health Plan as it promised the ratepayers of TVA it would adhere to and Defendant is not immune from suit for Plaintiffs' injuries outlined herein. In this case, Defendant failed to exercise due care in order to protect individuals performing site remediation once a Site Wide Safety and Health Plan was adopted. The Site Wide Safety and Health Plan was not followed by Jacobs. Under the rationale in Mays, Defendant is further liable to Plaintiffs for the following activities that are outside the scope of the authority delegated by TVA:

   A.  failing to train employees/independent contractors/subcontractors in applicable policies or procedures for working at the Site and for day-to-day safety for health, operations and management;

   B.  negligence or inadequate performance by failing to implement contracted promises to TVA and its site remediators, including contractors and subcontractors;

16

C.     negligence and inadequate performance by Defendant of implementing policies and procedures regarding health and safety as promised to TVA for independent contractors and subcontractors working on the Site;

D.     negligence in the construction and implementation of approved safety and health plans for independent contractors working on the Site;

E.     negligence in failing to provide approved adequate health equipment as promised to TVA for those independent contractors and subcontractors who worked on the Site; and

F.     negligent maintenance and the intentional altering and manipulating of toxic air monitoring results to TVA to create lower PEL readings that directly violated TVA directives and its scope of authority, and violating other statutes and regulations all of which caused injuries to Plaintiffs.

38.     Defendant Jacobs knew, or should have known, that the previously referenced actions were non-discretionary, as maintaining site safety and adherence with directives, statutes and regulations allowed for no discretionary choice.

39.     Moreover, Jacobs knowingly altered, and destroyed portions of air sampling material for testing to allow those in the exposure zone to be exposed to elevated amounts of toxins in violation of Sec. 6.0 of their Site Wide Safety and Health Plan they were adhered to follow.

40.     Jacobs had actual notice of the seriousness of the potential problem with the air monitoring and lack of adequate safety and still chose to take little or no action to prevent serious injury to the plaintiffs and others with windward erosion.

17

41.     Jacobs' negligent acts and/or omissions described above proximately caused and continue to cause damage to Plaintiffs in the form of pain, suffering, economic loss, loss of quality of life, aggravation and inconvenience, medical bills and other damages – for all of which they are liable in damages. To compound the problem, Defendant has failed and refused to warn Plaintiffs of the potential for serious injury and death from the fly ash constituents and particulate matter.

42.     Upon information and belief, Jacobs engaged in misrepresentation to limit its liability to TVA due to its having to be held accountable to the TVA Public Relations Department as a part of its safety implementation.

43.     The Rogers Group was negligent for engaging in improper water suppression of fly ash by allowing trucks to enter the facility site from the exclusion zone without partial or total decontamination; by accepting dry fly ash without proper hydration levels; by creating a toxic fugitive dust environment without proper safety measures; by allowing trucks to increase air borne ash particulates by not taking proper safety measures through travel, unloading, loading and dumping; by accepting fly ash that was in turn a primary in ingredient in the production of it's asphalt that it produced in Roane County but which was not properly screened for toxic constituency and legacy contaminants. All of the previously referenced proximately caused or contributed to the injuries incurred by the Plaintiffs.

## SECOND CLAIM FOR RELIEF

### Assault and Battery

44.     Plaintiffs refer to and re-allege Paragraphs 1 through 41 of this Complaint and incorporate them by this reference, as though fully set forth herein.

18

45. Plaintiffs hereby assert their cause of action for Assault and Battery as Jacobs and Rogers Group violated Tenn. Code Ann. § 39-13-101.

46. Defendants knew that the fly ash contained hazardous substances before and during remediation activities. Defendants nevertheless intentionally, knowingly, wantonly, offensively, willfully, and/or recklessly caused such hazardous substances to come into physical contact with Plaintiffs who worked on the Site and/or were transporting fly ash to and from the site.

47. Such physical contact with hazardous substances in such matter was harmful and unwanted.

48. Plaintiffs did not consent to such physical contact with any hazardous substances. Plaintiffs consented only to physical contact with materials described as non-hazardous substances.

49. Despite its known hazards, Jacobs Safety Manager, Tom Bock, intentionally misrepresented to others "you could drink fly ash daily and suffer no adverse health effects." This created a climate such that the workers, including Plaintiffs, believed the work site to be safe.

50. As a direct and proximate result of Jacobs' and The Rogers Group causing Plaintiffs to suffer harmful offensive physical contact with hazardous substances contained in fly ash, Plaintiffs have suffered injury and disease, fear from disease, medical expenses, monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial. By violating criminal law under Tenn. Code Ann. § 39-13-101, Jacobs was not allowed discretion or choice and acted contrary to government will.

19

## THIRD CLAIM FOR RELIEF

### Negligence *Per Se*

51.     Plaintiffs refer to and re-allege the previously referenced violations of state and federal laws as referenced in the entirety of this Complaint. Jacobs and the Rogers Group violated the following:

      a.     Tenn. Code Ann. § 39-13-101;

      b.     Tenn. Code Ann. § 39-13-103;

The Tennessee State Air Pollution Control Regulations:

      c.     Tenn. St. Reg. 1200-3-3;

      d.     Tenn. St. Reg. 1200-3-5;

      e.     Tenn. St. Reg. 1200-3-8;

      f.     Tenn. St. Reg. 1200-3-10;

      g.     Tenn. St. Reg. 1200-3-11;

      h.     Tenn. St. Reg. 1200-3-12;

      i.     Tenn. St. Reg. 1200-3-13;

      j.     Tenn. St. Reg. 1200-3-19;

      k.     Tenn. St. Reg. 1200-3-22; and

      l.     Tenn. St. Reg. 1200-3-37.

52.     Plaintiffs hereby assert their cause of action for Negligence *per se*.

53.     Further, Plaintiffs assert respiratory protection was necessary, especially in instances when prescribed by a physician.

20

54.     Further, Plaintiffs were engaged in an ultra-hazardous activity further imposing strict liability.

55.     Jacobs intentionally/recklessly altered air monitoring samplings and in turn results and records to alter PEL's at unsafe levels.

56.     Jacobs and The Rogers Group violated Tenn. Code Ann. §§ 39-13-101 and 103 by knowingly and/or recklessly allowing Plaintiffs to incur bodily injury through contact with fly ash toxins and committed criminal assault and battery contrary to TVA directives and outside the scope of the authorized agency.

47.     As a direct and proximate result of Jacobs' and The Roger's Group's negligence *per se*, Plaintiffs have suffered or are reasonably certain to suffer diseases, fear as a result, medical expenses, monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial.

58.     By not communicating that toxic fly ash was dangerous to Plaintiffs, Jacobs violated TVA directives that mandated this course of conduct and acted outside the scope of its authority.

## FOURTH CLAIM FOR RELIEF

### Intentional and/or Reckless Failure to Warn

59.     Plaintiffs refer and re-allege Paragraphs 1 through 58 of this Complaint and incorporate them by this reference, as though fully set forth herein.

21

60.    Plaintiffs hereby assert their cause of action for Intentional and/or Reckless Failure to Warn – which also constitutes a violation of Tenn. Code Ann. § 39-13-103 amongst other relevant laws cited.

61.    Defendants knew, or should have known, that the fly ash was contaminated with toxic constituents.

62.    Defendants therefore had a duty to warn and be truthful to the workers and TVA of the presence of the toxic constituents and the actual amounts onsite that went beyond permissible exposure limits as some workers may be more physiologically sensitive to its toxins through ingestion, inhalation, and dermatological contact.

63.    Defendants breached their duty by not only failing to warn Plaintiffs, but actually fraudulently concealing the fact from Plaintiffs and, upon information and belief, TVA.

64.    Defendants' breach of the duty to warn caused Plaintiffs to work inside the dangerous environment without any respirators, masks, or personal protective equipment, and to be exposed to high concentrations of toxins during that period of their continuous exposure.

65.    As direct and proximate result of Defendants' negligent/reckless failure to warn, Plaintiffs have suffered personal injury by acquiring illnesses such as pulmonary injuries (some so serious they need lung transplants), sinus injuries, heart injuries, strokes, skin problems, and etcetera, fear of disease, medical expenses, monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### Reckless Infliction of Emotional Distress

22

66.     Plaintiffs refer to and re-allege Paragraphs 1 through 65 of this Complaint and incorporate them by this reference, as though fully set forth herein.

67.     Plaintiffs hereby assert their cause of action for Reckless Infliction of Emotional Distress.

68.     Defendants had a duty of care toward Plaintiffs not to cause then undue emotional distress.

69.     Jacobs' knowing, wanton, and willful exposure of Plaintiffs to toxins and other hazardous substances breached its duty of care toward Plaintiffs as directed by TVA in delegating its authority to and relying upon Jacobs as an independent contractor to control site wide safety.

70.     Defendants' choice to expose Plaintiffs to toxins and other hazardous substances has caused them to acquire the previously referenced illnesses and disease and suffer emotional distress to a degree that no reasonable person should be expected to suffer.

71.     As a direct and proximate result of Defendants" negligent infliction of emotional distress upon Plaintiffs, Plaintiffs have suffered damages, the exact amount to be proven at trial.

### SIXTH CLAIM FOR RELIEF

#### Fraud

72.     Plaintiffs refer and re-allege Paragraphs 1 through 71 of this Complaint and incorporate them by this reference, as though fully set forth herein.

73.     Plaintiffs hereby assert their cause of action for Fraud.

74.     Jacobs represented to Plaintiffs that the fly ash did not contain dangerous toxins or other hazardous substances.

75.     Jacobs knew that its representation, both public and private, were false.

23

76.     Jacobs outrageously intended to cause Plaintiffs and others to continue to work on the Site without respirators or adequate personal protective equipment for its monetary benefit and altered air monitoring test results and, upon information and belief, emptied cartridges of fly ash to affect the amounts collected for detection amounts. Plaintiffs would not have worked in this environment without personal protective equipment had they had full knowledge that they did have contact with dangerous toxic constituents and other hazardous substances.

77.     Plaintiffs, in justifiable reliance upon the initial climate created by Jacobs that the Site was safe, worked without personal protective equipment and continued to do so for many hours per day even after noticing co-workers got sick still trusting Jacobs. Specifically referenced are the statements, both public and private, by Jacobs Safety Manager Tom Bock, that the fly ash was safe inducing such reliance and trust despite his superior knowledge it was not.

78.     As a direct and proximate result of Jacobs' fraud upon Plaintiffs, Plaintiffs have suffered the referenced diseases and conditions, fear of disease, medical expenses, monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### Misrepresentation/Fraudulent Concealment

79.     Plaintiffs refer to and re-allege Paragraphs 1 through 78 of this Complaint and incorporate them by this reference, as though fully set forth herein.

80.     Plaintiffs hereby assert their cause of action for Misrepresentation and/or Fraudulent Concealment that occurred outside the scope and contractual authority conferred by

24

TVA that were actually breaches to TVA and the ratepayers that were contrary to contractual purpose.

81.     Management at Jacobs knowingly and intentionally lied to subcontractors regarding the safety of the toxicity of the fly ash. Jacobs Safety Manager, Tom Bock, stated you can "DRINK A GLASS OF FLY ASH PER DAY AND BE HEALTHY" – although this is patently untrue.

82.     Jacobs misrepresented and concealed from Plaintiffs that the Site did contain toxic constituents or other hazardous substances.

83.     The information known by Jacobs was concealed falsely and it acted with reckless regard as to whether or not its representation/concealment was false.

84.     Jacobs failed to use due care and honesty regarding the accuracy of its representations to Plaintiffs and deviated from its own Site Wide Safety and Health Plan and its promises to the TVA ratepayers and Roane County residents.

85.     Jacobs intended to cause Plaintiffs to continue to work on the Site without personal protective equipment.

86.     Plaintiffs, in justifiable reliance upon Jacobs' representation that the toxic fly ash was safe, did work on the Site without respirators, masks or personal protective equipment.

87.     Plaintiffs would not have worked on the Site without respirators or personal protective equipment had they known of the dangers of prolonged exposure.

88.     As a direct and proximate result of Defendant's fraud upon Plaintiffs, Plaintiffs have illnesses, fear of disease, medical expenses, monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial.

25

## EIGHTH CLAIM FOR RELIEF

### Strict Liability for Ultra-hazardous or Abnormally Dangerous Activity

89.     Plaintiffs refer to and re-allege Paragraphs 1 through 88 of this Complaint and incorporate them by this reference, as though fully set forth herein.

90.     Plaintiffs hereby assert their cause of action for Strict Liability for Ultra-hazardous or Abnormally Dangerous Activity.

91.     Jacobs conducted this abnormally dangerous activity in a manner that was contrary and outside the scope of TVA knowledge.

92.     Remediation of a Superfund cleanup site without compliance with environmental regulations poses an excessively high degree of risk of harm to humans such as the plaintiffs.

93.     The remediation of a Superfund site without compliance with environmental regulations is not a common activity.

94.     The remediation of a Superfund site without compliance with environmental regulations was entirely inappropriate to the location at which it was carried out.

95.     There is little, if any, value to the community in the remediation without compliance with environmental regulations.

96.     The arranger of remediation and site wide safety of a toxic Superfund site without compliance with environmental regulations therefore constitutes an ultra-hazardous or abnormally dangerous activity.

97.     Jacobs acted at all times material to this Complaint outside the scope of directives of TVA as an arranger for disposal and safety.

26

98.     Plaintiff Christina Wilkinson incorporates all claims herein by reference verbatim and additionally asserts her claims for loss of consortium, time, monies, and the like, along with the following Prayer for Relief.

99.     As a direct and proximate result of Defendant's environmental remediation without compliance with environmental regulations and other safety standards and TVA directives as an "independent contractor", Plaintiffs have contracted diseases and serious health conditions, fear of disease, medical expenses, monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial.

## JURY DEMAND

100.     Plaintiffs hereby demand a trial by jury on all issues raised herein.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray judgment against Defendants as follows:

101.     For fair compensatory damages for physical injury, disease, fatal illness, pain and suffering, mental anguish, medical expenses, medical monitoring costs, and lost wages in any amount not to exceed Fifty-Five Million Dollars ($156,000,000.00);

A.     For punitive damages equal to fifteen percent (15%) of Defendant's contracted revenue regarding all KIF remediation contracts between TVA and these Defendants or between these Defendants; and

B.     On all Claims for Relief, such other and further relief as this Court deems just and proper under the circumstances.

C.     Plaintiffs reserve the right to amend this Complaint against all parties, as the facts, through discovery, should warrant.

27

Respectfully submitted this 9th day of March, 2018.

John Dupree
Keith D. Stewart
Jim Scott
Market Street Law, PLLC
625Market Street, 14th floor
Knoxville, TN 37902
865-245-4438

## COST BOND

We hereby acknowledge ourselves as sureties in this cost of this cause in accordance with

Tenn. Code Ann. §20-12-120.

Market Street Law, PLLC

By: _____
John B. Dupree

28